## P. B. Price, Appellant, *v.* M. McConnell, Appellee.

### APPEAL FROM MORGAN.

A deed conveyed to M certain premises, extending to the west line of the west wall of a brick building upon the premises; so that it included the whole of the west wall; with the reservation that the owners of the ground on both sides should have the mutual use of the present partition wall. At that time there was a small one-story brick building on the lot adjoining on the west. Subsequently, M's grantors conveyed this other lot to P, who tore down this small building, and erected one much higher, and extending further along on M's wall. *Held*, that the reservation in the deed to M, extended only to such portions of the west wall as were then used as a partition between the buildings, and that P had no right to the mutual use of any other, or greater part of this west wall.

This was an action on the case, brought by McConnell in the Circuit Court of Morgan county, based upon the following facts:

In 1850, the heirs of Gov. Duncan, deceased, were the owners of a lot in Jacksonville, upon part of which was built a large brick building, called the Morgan House, afterwards and now called the Mansion House, which building was and is three stories high, fronting south on the public square of said town, and running back north.

Adjoining this building on the west, also belonging to said heirs, was a small brick building, about one-third as high, and running about two-thirds of the depth of the same, built up against the west wall of said Mansion House, and occupying about one-third of said wall as a partition wall of said small house; but no joist of said building was inserted, or weight placed upon the wall of the Mansion House.

On the 1st of June, 1850, the heirs of Duncan, by the master in chancery of said county, sold the Mansion House and the land whereon it stood, to McConnell. The deed of the master in chancery to McConnell, which is set out in this record, shows that his purchase extended to the west line of the west wall of said house, including all the land and all the wall, and excluding this small house situated on the adjoining lands of said heirs. The deed is an absolute conveyance in fee, of all the premises and appurtenances, but contains the following reservation, while describing the west line of the property, to wit: the owner of ground on both sides to have mutual use of the present partition wall.

In 1851, McConnell leased this property to a tenant for ten years, who went into possession and occupied the same, until the committing of the grievances herein complained of, and until the commencement of this suit.

In 1858, the heirs of Duncan sold the adjoining land whereon the small house stood, to Price, the present party, and he went immediately into possession. In this deed was the following clause: " To have and to hold, etc., together with the use in common with the owners of the ground, occupied by the owners of the Mansion building, of the partition wall between the Mansion House and the premises hereby conveyed." Price then tore down this small house, and built upon the same ground a new house, higher and larger than the old house, which new house he extended above and further back than the Mansion House, and put three tiers of joist thereof in and through the wall of the Mansion House, and building but three walls to his house, and using the Mansion House wall as the fourth wall, and when he had built to the top of said wall, he built upon it, to make it higher to suit his house, and placed one-half of the weight of his house upon the wall of McConnell's house. North of the Mansion House, Price tore away a part of the side wall of a house McConnell had there on his own land, and extended his new house north, and on a line of the Mansion House, and upon McConnell's land.

This suit was brought by McConnell for the damage done by Price to the reversionary interest of said McConnell in this property, the same being in possession of his tenant. The case was tried before a jury, and a verdict and judgment rendered for five hundred dollars and costs, to reverse which, Price has brought the suit to this court by appeal.

D. A. SMITH, for Appellant.

M. McCONNELL, *pro se.*

WALKER, J.  This was an action on the case instituted in the Morgan Circuit Court, for an alleged consequential injury to the building of defendant in error.  It appears from the evidence in the record, that in June, 1850, he purchased the building in question, at a master's sale, of property belonging to the estate of the late Governor Duncan.  The deed of conveyance contains this description and reservation : " Beginning at the south-east corner of lot number sixty-one, in the original plat of Jacksonville ; thence running west forty-five feet three inches, more or less, measuring on the ground, to the west line of the main building of the " Morgan House," *the owners on both sides to have mutual use of the present partition wall ;* from thence north one hundred feet ; thence west sixteen feet nine inches ; thence north eighty feet more or less to the alley ; thence east seventy-two feet more or less to the north-east corner of said lot sixty-one ; and thence south one hundred and eighty feet, more or less, to the place of beginning."  The evidence also shows, that at the time this deed was executed, there was at the south end of the "Morgan House," and on the west side, a one-story brick building extending north, and adjoining to the "Morgan House" a portion of the distance of the length of that building.  It also appears, that the joists of this one-story brick building were inserted into the west wall of the Morgan House at the time of the conveyance.  Also, that the Morgan House was a three-story brick building, with a thirteen-inch wall, in the lower story, and a nine-inch wall in the two upper stories.

Plaintiff in error having, in 1858, purchased the adjoining ground, on the west of the Morgan, now the Mansion House, including the one-story building, " together with the use in common with the owners of the ground occupied by the owners of the Mansion House, formerly called the Morgan House building, of the partition wall between the Mansion House and the premises hereby conveyed," proceeded to remove the old building from his lot, and to erect a new three-story brick building in its place.  In doing so, he used the west wall of the Mansion House, as the east wall of his.  And to accommodate his building, he pierced the west wall of the Mansion House and inserted the ends of three tiers of joists, which defendant in error claims, was without authority, and was injurious to his property.  That plaintiff in error also attached a shed building, and in doing so, caused the earth to be removed to the depth of the foundation of a shed building, annexed to the Mansion House, and caused the foundation to be removed and replaced by another.  He also removed the weather-boarding from the west side of this shed building, and

built the space between the plaster and weather-boarding, with brick as high as the eaves, which he sawed off and continued his own shed building above that of defendant in error. In doing so, he constructed a valley or gutter where the eaves had been removed, but it was insufficient to prevent leakage and dampness, and caused a door in that building to sag. He also placed some additional bricks on the parapet wall of the Mansion House to increase its height.

Plaintiff in error, by his conveyance from Duncan's heirs, acquired all the right to use the west wall of the Mansion House as a partition wall, which was reserved in the master's conveyance to defendant in error. Whether it extended to the whole, as he contends, or it was limited alone to the wall separating the Mansion House from the one-story brick building on the west, as defendant in error insists, he succeeded to the right reserved to Duncan's heirs. And he had the unquestioned right to use whatever portion of the wall which was then reserved as a party wall, for that purpose, so that he occasioned no damage to the owner of the Mansion House. The use of such a wall is mutual, but it must be reasonable, and such that neither of the parties inflicts substantial injury upon the other. Nor has either the right to remove or destroy the wall, nor to appropriate it exclusively to his own use.

But the main question in this controversy grows out of the construction to be placed upon the reservation contained in the deed from the master to defendant in error. If it can be ascertained, the intention of the parties to that deed must govern, in giving effect to the grant, as well as the reservation. It is also a rule of construction, that in cases of doubt, or when the language employed will reasonably bear either of two constructions, the instrument must be construed most strongly against the grantor. In this case the difficulty arises from the fact that, at the time the master made the conveyance, there was a portion only of the west wall of the Mansion House actually used as a party wall between the buildings, whilst the remainder only separated the estates. Had the lot west of the Mansion House been wholly vacant, then there could have been no doubt as to the intention of the parties. But as it was then situated, did the parties only intend to reserve the right to continue the use of that portion of the wall then enjoyed as a partition between the buildings, or the entire wall separating the estates, as the partition wall? The master's deed conveyed the entire west wall to defendant in error, but reserved this privilege out of the grant. The call of the deed is for the west line of the west wall of the

building, and it will be observed that the reservation is not of that wall, or of the west wall of the building, but it is of "the present partition wall." This language seems to exclude the presumption that it was designed to reserve the whole of the west wall of the building as the partition wall.

If that had been the intention, it seems manifest that, as that wall had been already named as the boundary, some specific reference would have been made to it as the partition wall, but the language employed seems to refer to something different. If this was not the manifest intention of the parties, there is at least serious doubts as to what it really was. Here was a wall dividing the two estates, and a portion of that wall also formed and was then used as a partition wall of the two buildings situated on each side of the line. The reservation seems, from the language employed, more naturally to attach to the wall actually in use, than to the entire west wall of the building, but if it seemed to apply equally to one or the other, still if the deed must be construed most strongly against the grantor, the reservation must be limited to that portion of the wall separating the two buildings then in existence. The court, therefore, by the instructions given for defendant in error, in adopting this construction, committed no error.

The plaintiff in error, then, had no right to use any portion of the wall except that which was already appropriated to that purpose. He had no right to insert the ends of the joist of his building into any other portion of the wall of the Mansion House. He, by doing so, committed an injury to the reversionary interest of defendant in error, for which he had a right to recover damages. The evidence seems to establish the fact that he, in doing so, caused unnecessary injury to the wall. Whether the use of the entire wall as a partition was more convenient and less expensive to plaintiff in error, has nothing to do with the question. It is what were his legal rights—not what was convenient or profitable to him. The defendant in error had the undoubted right to use and enjoy his property in such a manner as he chose, independent of the opinion of others as to whether it is the most eligible that could be adopted, provided only that he inflicts no injury upon others.

In this case, no error is perceived in giving these instructions, and the evidence warrants the finding of the jury. The judgment of the court below is therefore affirmed.

*Judgment affirmed.*